Again, Your Honor, may it please the Court, I am John Gladich of Gladich Associates representing the appellant. We are here today on an issue with regard to this insurance company, and I use American States and Safeco interchangeably. They're essentially one company or in privity with each other, adjudicating an issue of a particular language of an additional insured endorsement in a particular setting, being a contractor, subcontractor, that has been fully adjudicated, fully and finally adjudicated, as against this insurance company. Now, I'm sure we will hear, both sides, amicus, discussions that I've read about how this affects the other people in the industry. Maybe so. I believe the issue of the due to defend to an additional insured by the press aid decision is decided for the entire industry in the State of California. If your duty to defend is triggered, and we're not going to use public policy to trigger it, if the duty to defend is triggered, meaning there is a potential for coverage, which is undisputed in these cases, then your duty to defend is full and complete, and you, however many subcontractor insurers there are, you can go spend your money, your time, your effort to go chase the other carriers and come up with an equitable solution, as in the Maryland Casualty cases or the Pardee cases. Counsel, as I recall, the Pressley case was the California Intermediate Court of Appeals, not the California Supreme Court. Is that right? That is correct. Now, as I recall, the Ninth Circuit has held that while we must follow California Supreme Court authority, we treat California Intermediate Appellate Court authority as guidance but not binding, and we make our own judgment about whether we think the California Supreme Court would so rule. That is correct. Correct statements. And one thing to keep in mind is American States, which kept Pressley from being final, took that matter up to the Supreme Court for review. Review was denied. The Pressley decision was published. It remains in state court. Go back to state. It's a published Intermediate Appellate Court decision. It is binding. So in. Is it binding throughout California, or is it only binding within the particular appellate district in California, if I am in California state court? It is binding throughout the entire State of California because no other district has decided that issue differently. Well, pardon me. I'm asking you a different question. Coming up in the next day, the same question comes up in a different appellate district. Is the different appellate district bound by Pressley-Holmes? Different appellate district? That's what I'm asking. Now, from the appellate district, I believe, Your Honor, and you're going back to my procedure days, that they can, if they come up, then create a conflict, which would then hopefully get the attention of the Supreme Court. That is to say, when we decide something in the Ninth Circuit, the Fourth Circuit is not bound, as it is often at pains to remind us. Correct. Yes. It is correct, as between the appellate courts. So this may or may not be settled law in California. We have a very clearly articulated rule in Pressley-Holmes. Except as against American States and Pressley, because there can be no dispute as to that party. It doesn't matter. Collateral stop applies whatever district you're in. As to that party, they took their full fair shot, and it is collateral stop as to them. Some other carrier wants to step up, perhaps they can go to another district, and second district, first district, and try to convince them that Pressley and Buss are wrong. But Pardee, or the other cases cited, are not insured versus insurer. They are insurer. And Pardee, that was the case that struck me as perhaps laying down a rule contrary to Pressley, although it is arguably distinguishable. If you look at it, Your Honor, one's in between carriers. Pardee had a bunch of carriers that were fighting each other, ICW, Nielsen. And that's where they say, I believe it's either Pardee or the other one, full and complete defense. They cite to Buss. Buss is one of those cases. It doesn't sound fair that an insurance company even should have to defend the entire action against Mr. Buss when one or two claims in that case was defamation and all the rest was about his ownership of teams and breaches of leases. It doesn't sound fair. But that's the law. It's not just a matter of fair. It's whether it makes any sense considered in light of the reasonable expectation of the parties. To me, the effect of this means that if we apply Pressley, it means that a general contractor doesn't need to buy liability insurance. All the general has to do is require that his subs buy liability insurance for their own failures to perform competently and that they get the free endorsement that applies to the general for the sub's failure. And then the general has what amounts to a general liability insurance for free. I don't see how anyone could think that they'd be entitled to it, but it looks like that's the practical effect. May I go over just to answer your question, Your Honor? Please do. Is here's a general cannot go bare, essentially, because what we're talking about, there's no question that in this endorsement there's limited coverage, indemnity coverage. The carriers for the subcontractors to settle or to pay judgment against the general contractor are only going to be on the hook for the share that arises out of them. And that's going to be an element of proof, right now those subcontractors work. So if the general contractor wants to expose himself entirely, how foolish that would be, one, I don't think the bill that the people, the owners or the public entities would allow it. But he'd be still exposed to all the liability. In addition, with regard to the defense, the free defense, BUS took care of that. And they said, no, okay, Mr. BUS or okay, Mr. General Contractor, we'll give you this full complete defense to all these uncovered things that we have no duty as the door knocker to defend for a soils case or to pay for a soils case. But when we allocate and you have your expert framer and we're the door knocker, you're going to end up having to pay that back. So no, you'd be very foolish, Your Honor. It's not free. It might be temporary, but it's certainly not free. Have I responded to your question? Yes. Thank you, counsel. May it please the Court. As I indicated earlier, I'm Erwin Adler and I'm representing American States and SAFECO in connection with this matter. I disagree point blank with Mr. Gladitch's characterization that this is not a free right. It's, of course, a free right and it's contrary to what had been and what had been perceived as California law. Basically, after Presley, there's a direct unqualified conflict in the case law governing how you interpret these additional insured endorsements. Can I ask you this? If Presley-Holmes is binding law, I understand you want to find ways that it's not or that doesn't apply. But if Presley-Holmes is binding law, is that the end of the case from your standpoint? I mean, do you lose? Presley is a decided decision of the California court. Maybe. Let me ask you this way. If Presley-Holmes had been decided by the California Supreme Court and written in precisely the same way it is now written, would you lose? Absolutely, if it were the California Supreme Court. Okay. That's what I wanted to know. And what I'm indicating to the Court, what I indicated a moment ago that I totally disagree with Mr. Gladitch's position, is that what we have is we have the Pardee decision. The Pardee decision is very clear, as I believe Judge Kleinfeld pointed out, indicating that, quote, "...the additional insured coverage is intended by the insurance industry to cover vicarious liability that an additional insured may incur due to performing the original insured's work." In other words, what we're talking about is vicarious liability. That's all it was designed to, the additional insured endorsement, was it designed to take care of. With respect to Maryland Casualty, which was a case decided before Presley, that is another decision that squarely indicated that, no, the carrier for the subcontractor was not obliged to pick up the tab for all of the general's work. The general does not get a free ride. Subsequently, and I think this is what Judge Kleinfeld was pointing to, we have two subsequent decisions, both of which have been brought to the Court's attention. We have the St. Paul v. Frontier insurance case, which the Court was made aware of somewhere within the last week, 10 days, when it was, publication was ordered on that, as well as the ARB case, another St. Paul case, different St. Paul company. That was pointed out in our briefs, in which the Court says in those cases that the additional insured endorsement does not give the general contractor a free ride. We have Presley. I acknowledge Presley exists. Presley, however, is one of a number of cases deciding the additional insured endorsement, and as far as Presley is concerned, it is in a minority. There is one other point I want to make about Presley. Presley was decided as a matter of public policy. The Supreme Court of California has indicated in the Powerine case, just before Presley, as well as just recently in the Rosen case, another case we brought to the Court of Appeals, where the Federal government has indicated that the Federal government has no other basis for writing terms into or out of an insurance policy. The language of the policy controls. What we're talking about here in terms of the additional insured endorsement is a particular, unique, limited capacity that the general contractor has by virtue of that subs policy. Give me your answer to two arguments that your adversary made. One is how would you phrase your answer to the collateral estoppel argument? And my second question is how would you put your answer to the bus argument, that even if the general is not entitled to a free ride on the liability, nevertheless, they're entitled to a full defense? Let me deal with both of those. In terms of collateral estoppel, Mr. Gladich's client, Mr. Rice and Suntree, are neither in privity with Rice, nor in any way have they the ability to take a collateral estoppel effect of this particular judgment. They're simply not a party. As to the bus argument, bus is a different type of policy in a different type of situation. And I'd like to focus on bus for a moment, and I'd like to focus on the additional insured endorsement. But in order to do that, I've got to move back a few years to the Bowie case, which this Court decided in dealing with what the capacity of a particular insured is. Insurance carriers don't simply insure somebody as, quote, an insured, and so therefore, they're an insured for all purposes. They're insured in a particular capacity. What has happened in the industry and what's happened with these additional insured endorsements, the general contractor is insured in the limited capacity for vicarious liability arising out of the doorknocker. To give an analogy here, and then I will deal exactly with the bus language and the bus situation, is what we have here is we've got a situation like a dentist's office. We've got somebody walking into the dentist's office. The dentist has, commits malpractice on this particular patient. Then the patient goes out and has a slip and fall in the hall, in the entranceway. In that situation, the patient has got two claims, one for malpractice and one for bodily injury based on the slip and fall. If he turns around and he sues the dentist and he says, I want recovery for my slip and fall, I broke my leg. At that point, the carrier for, the CGL carrier at that point has no obligation to pick up the defense of the malpractice case. The insured is only insured in a limited capacity for the events that are covered by that policy. Now, in terms of the, and the situation doesn't change if we have an outside cleaning service come in and the cleaning service is responsible for that slip and fall. If they give an additional insured endorsement, under Mr. Gladich's theory, even though the dentist was only insured for various slips and falls under that CGL policy and did not cover the malpractice, if I were to listen to him, it would be that the, the cleaning service would now have to pick up, because it issued the, or had its carrier issued that additional insured endorsement, it would not only have to pick up the slip and fall damage for which it was responsible and for which its policy would cover it, but it would also have to cover the, the malpractice claim. I think your argument is that Presley-Holmes is really stupid. That is to say, you disagree vehemently with Presley-Holmes. The trouble is we can't decide California law. What in California law tells us that Presley-Holmes is wrong under California law? What tells you that California, what tells you Presley-Holmes is wrong is Maryland Casualty 2 tells you it's wrong. The St. Paul case tells you it's wrong. The second St. Paul case tells you it's wrong. Pardee tells you it's wrong. In other words, the district court. And the second question, I'm not sure I heard the answer to Judge Kleinfeld's first question, which was to say, how do you respond to the collateral estoppel argument? That is to say, were you a party in Presley-Holmes? We were a party to Presley-Holmes, but we were not. And did you lose? We lost. And why are you not then collaterally estopped in a non-mutual collateral estoppel? Because in terms of losing a particular argument on a particular policy in a particular fact setting, that is not automatic collateral estoppel for somebody who is not a party or in privity with that particular argument. I'm not clear on California law of collateral estoppel. I know in Alaska law, offensive collateral estoppel can be used by a non-party, not in privity against a defendant who was the same party that lost a previous case. So under Alaska law, you would need a different argument. I don't know California law. I believe the law in California is the same as long as you have the opportunity to fully litigate the question. Your Honor, it is one of those situations that the California courts, I don't have the case in front of me and I don't have the cases in front of me. California does not believe in the theory, as some States do, that if you've got one passenger on a bus and the single passenger prevails in terms of an auto or in terms of an auto accident type case, that the other 19 automatically are able to take advantage of it. Are you sure that under Alaska law, the other 19 can? As far as I know, Your Honor, and I believe it to be the case that that is the law of California, it may be helpful to the court. I don't have a cite on hand because I didn't expect that question to come up. I would be delighted to present a short letter brief within 10 days on that subject. It does seem anomalous, to say the least, that if you were found in State court because you previously lost the very same, your client previously lost the same issue in State court, even if it is only as to the appellate district where Presley was decided, that you could come into Federal court and not be bound by that decision? I think what we have, Your Honor, is a situation that in terms of the California court system, we have other decisions. Most of the cases, as I pointed out before, Hardy and the Maryland Casualty II and St. Paul cases come out the other way. Excuse me for interrupting, Your Honor. Yes, excuse me. I want to ask you about that point before you go on. That's fine. Focus in on that. The standard that you have to meet is you have to show that there is convincing evidence that the law would be different in California. And I just want to be very clear that your convincing evidence are those cases that you cited, Hardy, St. Paul, Maryland Casualty. Is there anything else, any other convincing evidence or any other case that you think presents convincing evidence that Presley would not be adopted in California? Well, I think the big, one of the biggest elements of indicating that Presley would not be adopted is Presley reaches that conclusion based on a reading of public policy, ignoring the language of the endorsement and ignoring the reasonable expectations of the parties. The Court says squarely we will not deal with the reasonable expectations of the parties, and it says it squarely in the opinion. It also does not attempt to interpret the language. It simply says we have decided bust. And, again, this is kind of going full circle to where Judge Kleinfeld was going. But in terms of when we're dealing with bust, we are dealing with somebody who has a policy. The policy is issued to Jerry Bust or anybody in Jerry Bust's position, and it says we are going to cover you for every claim that's made against you, squarely in the policy, including those that are groundless, fraudulent, or frivolous. When you have the additional insured endorsement, the additional insured endorsement only covers someone for the very narrow capacity that's set forth in that endorsement, and the endorsement says simply and squarely and is limited to only for liability arising out of the work of the named insured subcontractor. So that, in other words, we're dealing with two different kinds of policy. In the bust, we're dealing with somebody who has a general policy, and they are an insured under that policy. When we're dealing with somebody who claims rights as an additional insured under an additional insured endorsement, they have a very narrow group of rights, and the only right they have is that those rights that arise out of that endorsement. We've pointed out in our brief that under Civil Code Section 2778, it indicates how that language is to be interpreted, and it doesn't go broader than the claims that arise out of that obligation. In other words, when I have my – let's just take a simple example. I have an auto policy. I'm sure, you know, you're in the same position I have. I have a daughter. I'm going to add her on to the policy. She is added on as a named insured. She is another person who has full rights. She is not added under one of these additional insured endorsements, where you have just a very narrow window of coverage. Roberts, Thank you, counsel. Roberts, Thank you. Good afternoon. If it please the Court, Bob Claussen for Amicus Curiae Professional Association Specialty Contractors. It's interesting, at least from my perspective, that there is a constant reference to public policy. I think that stems from a reference in the Presley case. Presley seems to – actually, it comes out and says that the Supreme Court in Buss ruled that there is a complete defense obligation based on public policy. If you do a search for that term in the Buss decision, it doesn't appear anywhere. What the Court in Buss did rule is that the named insured under the policy who had paid the premium had a reasonable expectation of a complete defense. Here, those circumstances are not present. You have an additional insured, conditional, limited coverage, who did not pay the premium and who, based on various California appellate court decisions, did not have a reasonable expectation of a defense. One case I was involved in, one of the Maryland casualty cases, the Court actually said there was no reasonable expectation under this subcontractor's policy that it would have to fund 100 percent of the developer's defense costs. Oddly enough, the Presley decision relied on the Maryland casualty case. My clients are the subcontractors. They are the ones who ultimately pay the premiums on these policies. They're the named insureds that purchase them. And when the buzzards come home to roost, they come home to roost on my clients. Since the Presley decision, my client's average annual general liability premium has increased between 276 percent and 797 percent. And, yes, the guy who had the 797 percent increase is still in business, but he's not happy about it. In a recent Best Review article from July 2003, which I'd be happy to let the Court have my copy of. I think I understand, at least in general terms, the likely impact on your clients. Let me ask you a different question, though, and that is, are there other cases in the State courts in California, in the pipeline, raising this issue? Not that I'm aware of, Your Honor. And why not? Well, from my client's perspective, we have a difficult time getting in a procedural situation where we can articulate those circumstances. We would have to actually sue our own insurer and try to stop them from paying for the complete defense of the developer because it's harming them by increasing their premiums. And they have no interest in the insurance companies themselves have no interest? Well, the insurance companies do. The insurance companies have filed amicus briefs here today. They would, I'm sure, like to tackle that. Well, I mean, what's clearly going on is the amicus briefs would very much like the California Court of Appeal to be overruled by the Ninth Circuit on a question of California law. But we've got problems in so doing. Exactly, Your Honor. And one of the problems for my client is that the insurance companies have largely just capitulated. One of our problems is that we can't get insurance. A lot of these insurers have had to go out and enter into risk retention or captive insurance group situations where they pay out of their own pocket for the defense costs for the developer under these circumstances. Okay. Do you have any other ideas on some of these issues that have come up, namely collateral estoppel and how precisely we can say that the California Supreme Court would not follow Presley? Well, I wasn't prepared to speak on the collateral estoppel issue, Your Honor. But on the other issues, I would submit that the Presley case is there. Obviously, we have a difficult time dealing with it because it says some things that don't appear to be supported by the authorities it cites. The question I think this Court is confronted with is, if we were the California Supreme Court, how would we rule on this issue, knowing what we know now? And the answer to that question is the California Supreme Court did not contemplate these types of consequences and it did not look at these types of factors when it considered the issues in question. It was a simple named insured insurance company dispute where the party seeking to get a complete defense was the beneficiary of the complete defense rule, not the victim. In this case, the party who pays the premiums, the named insured who purchases the policy, is the victim of this situation. They're being driven out of business by this situation, and they're being driven out of business in a situation where the California Intermediate Courts of Appeal have concluded neither the additional insured nor the named insured had a reasonable expectation that a complete defense would be afforded. Those are the cases that Mr. Adler cited. Now, under those circumstances, would the California Supreme Court rule in an in-for-penny-out-for-a-pound type of situation that the named insured is the one who's going to have to bear the brunt of this when, in fact, the decision which originated all of this, the bus case, was for the opposite purpose, was to benefit the named insured, was to give a benefit to the party who had paid the premium, not kill them, not drive them out of business? Thank you, counsel. Thank you. Good afternoon, Your Honors. Reed Archambault, appearing on behalf of Amicus 396 Investment Company, formerly known as the Fieldstone Company. You understand we haven't decided whether the amicus brief will be filed, but we're permitting you to argue. Thank you, Your Honor. And the law firm of Neumayer & Dillian, my law firm that litigated the American States case. There's a fundamental difference between the duties to indemnify and the duties to defend, and I think they're being confused here. The duty to defend That is exactly what's been troubling me about this, because there's a whole legion of cases that hold in California that the duty to defend is much broader than the liability coverage. And it could be any potential for coverage of even one claim out of a ten-claim cause of complaint. The insurance company in ordinary situations is on the hook, and that seems to be running into what I think are very good arguments on the other side as to why Presley's wrong. Well, I think I heard this free ride concern. It's not a free ride. Most developers in California today are what's called paper developers. They hire subcontractors to actually swing the hammers and drive the nails. So they plan the project, coordinate the project, but then disperse the risk to the people who actually do the risk by insisting in the subcontract that they insure them and indemnify the developer. So it's not a free ride. It's in there somewhere. Counsel, let's narrow the focus of it a little. As I recall, the greater breadth of the duty to defend as compared with the duty to indemnify is to cover claims that are groundless, false, or fraudulent, and to cover claims that may be within the coverage as well as those that are within the coverage. However, I was interested in the hypothetical case about the dentist that your adversary gave, and I was thinking, boy, I know something about legal medical malpractice defense, that it's very expensive and it's typically handled by different law firms from the ones that do slip and fall defense. And in that case, I just can't imagine the slip and fall insurer being tagged with the cost of the medical malpractice defense. That's because the defense issue is a life and death issue. That's what separates it from the indemnity. Indemnity is money. Let me, if I indulge this for a few minutes. Let's talk about defense here. That's what we're really talking about right now. Isn't it, is it true that the slip and fall carrier, the premises liability carrier, would not be tagged with an obligation to provide the medical malpractice defense even if plaintiff's complaint had two counts, one for malpractice and a second for the slip and fall injury? Your Honor, I don't practice in the slip and fall area. I do represent developers, and developers receive top shelf- I assume you know something about insurance law, because you're arguing it. So give me the answer. Well, I- It's not a, it's not a question about slip and fall tort law. It's a question about insurance law. You, you deserve and expect the defense commensurate with the circumstance. And in our case- So are you saying, are you saying that the slip and fall, the premises carrier that covered for slip and falls would have to provide a medical malpractice defense? I, I'm not saying that. What I'm saying is- Why not? And if not, how can you distinguish that from the subs carrier? Suppose a plumbing sub having to provide a defense for something totally unrelated to plumbing. Because that's what they agreed to do in the additional insured endorsement, to defend liability arising out of their work. That's what they're agreeing to do now in light of Pressley-Holmes. I'm not sure they agreed to do it before Pressley-Holmes. Okay. Appellees cannot point to one scope of defense case. There's only four of them, two by the California Supreme Court, one in bus, one in Aerojet. Aerojet, there were 40 years of coverage. One insurer had one year and was expected to defend the entire case. Bus, 27 claims, only one was covered, defend the entire case. American States, one subcontractor defend the entire case. Pardee was a case where they said, okay, we only have to defend cases that incepted after we come on the rest. No, you defend all the cases all the way back to every one of your developments that the insured developed, all the way back. Not just those that incepted after the policy. The appellees are confusing the issue. Contribution and indemnity are different analysis. And all those remedies are left to the insurance companies. They provide an immediate and full defense. And at the end of the case, they can sue their own insured for any defense fees incurred in non-potentially covered claims. Alternatively, they can sue the other insurance companies on the rest for contribution. But that's the burden they want to foist on their insured at the beginning of the case, when there's life and death decisions, when hillsides are coming down and expensive experts are needing to be employed to avoid a catastrophic loss. We had a case in our office a couple of years ago, where all the experts agreed what was going to happen. A hill was going to come down, and they all agreed what was going to happen. The houses on top of the hill were going to collapse. A 60 million gallon reservoir owned and controlled by the city of Anaheim was going to collapse. Gas lines, southern gas lines that were in the hillside were going to fracture. And up percolating through all this, it was going to ignite, and you were going to have a 60 million gallon flaming ball of debris and water. That sounds like a terrible case. Now, let me come back to this case. Well, what happened in that case, though, is good experts were hired. People were forcefully evacuated from their homes. And also, the- Okay, I understand. Can I ask a different question? Which is to say, how does contribution work as among the other insurance companies? What gives one insurance company who's paid for the entire defense under Presley Homes? What legal obligation is there on the part of the other insurance companies to determine where that legal obligation comes from? Equitable apportionment. It's entirely equitable. And that's all the cases cited in Apelli's brief go to that, the apportionment between insurance companies. So that, in your view, is the remedy. Listen, you paid too much, go after them in equitable apportionment after the fact. Absolutely. It's not the insurance burden. Well, it's hard to determine at the outside, at the outset, what is arising out of which subcontractors work, isn't it? Absolutely, Your Honor. That's really why I think Presley decided it the way it is. Because how can, either you have it litigated fully, fairly, and squarely amongst the people who may have contributed to the damage. Or you've got the insurer, insured, going to the insurance company. And the insurance company says, no, that didn't arise out of this particular work. And that's not being litigated unless you're doing a coverage lawsuit. In the meantime, you've got this liability case going on. Take the example of leaky windows. Who could be responsible? The framer, the window, the grading contractor, because the house is suddenly racked, who knows who's responsible for that? Let me take that example for a minute. I'm thinking of another aspect of paying for the defense, where you have multiple insurers on the hook for it. I think the consequence of your argument is multiple insurers are on the hook. The general's insurer, plus all the sub's insurers. And when I used to do that sort of defense, we'd have big fights with each other about who was going to control what. And I'm trying to think, how would you resolve who gets to control the defense? Usually, the duty to defend is linked with the authority to control the defense. And that's a lot of the reason why insurance companies sell, as part of their policy, a promise to defend. They want to control the defense. Whoever comes on first with a full, complete, and conflict-free defense can defend. Well, that's a huge problem, because the window sub is going to defend in such a way so that everything gets blamed but the windows. What I'm saying is they can control the entire case. They'll be totally indifferent. Not only will they blame everything on something other than the windows, but they'll be totally indifferent to the damages that fall outside of the windows. There could possibly, potentially with your example, be a conflict, a cumus conflict in that case, entitling the general contractor to an independent defense. So the independent contractor could. But the independent already has an insurance company. I think it was Travelers in this case. Not necessarily. Most today have high deductibles and SIRs, some into the eight figures. So many have excess layers of insurance. But the first dollar insurance they're looking to is the additional insured, the people who actually did the work, that are closer to the risk and bearing the risk of the construction defects, because they did them. The developer planned the development, oversaw it, but didn't swing the hammers and drive the nails. Since you were involved in the prior litigation, did you bone up on the law of California collateral estoppel? Can you answer our question? I'm afraid I did not, Judge Warblow. Okay. I commend to you Witkin on non-mutual offensive collateral estoppel. Okay. Thank you, Your Honor. Thank you, counsel. Rice v. Safeco is submitted.
judges: Kleinfeld, Wardlaw, W Fletcher